**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jonathan L.S.,

Petitioner,

v.

Todd Blanche, *Acting Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David J. Venturella, *Acting Director of Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*; and Eric Tollefson, *Kandiyohi County Sheriff's Office*,

Respondents.

Civ. No. 26-2975 (JWB/LIB)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

Taylor Jon Volkman, Esq., Carthew & Volkman, PLLC, counsel for Petitioner.

David W. Fuller, Esq., United States Attorney's Office, and Derek Ganzhorn, Esq., Department of Homeland Security, counsel for Respondents.

---

This case presents two related questions: whether federal immigration officers acted within their statutory authority when they arrested Petitioner Jonathan L.S., and, if not, whether 8 U.S.C. § 1225(b)(2) nevertheless supplies a lawful basis for his continued detention. The first question turns on whether the arresting officers complied with 8 U.S.C. § 1357(a)(2). The second requires consideration of the distinct functions Congress assigned to §§ 1357 and 1225 and the proper scope of habeas relief under § 2241.

Petitioner is a noncitizen who entered the United States without authorization and

has been living and working in the community. Years later, he was arrested and detained by Immigration and Customs Enforcement ("ICE") agents. At issue is whether his arrest was lawful.

The record establishes that Petitioner was not arrested under a valid administrative warrant, and that Respondents' warrantless arrest violated § 1357(a)(2). Whether that violation requires release despite Respondents' reliance on § 1225(b)(2) is a separate question. For the reasons explained below, the statutes are best read to preserve their distinct functions: § 1357 governs the authority exercised to arrest Petitioner without a warrant, while § 1225 governs detention following the examination and determination prescribed there. On that reading, Respondents may not continue the present custody initiated through an arrest procedure Congress did not authorize.

**BACKGROUND**

Petitioner is a citizen of Ecuador. (Doc. No. 1, Petition ¶¶ 1, 8.) He entered the United States without inspection, admission, or parole in December 2022. (*Id.* ¶ 17; Doc. No. 7-1 at 2.) He has since lived in the country, resides in Minnesota, and works as a roofer. (Petition ¶¶ 8, 17.) Petitioner has a pending misdemeanor criminal traffic case from April 15, 2026, charging him with having an open cannabis package in a vehicle and giving false identification to an officer. (Doc. No. 7-1 at 2.)

While conducting surveillance, ICE agents apprehended Petitioner on June 11, 2026, at a roofing work site in Bemidji, Minnesota, after he and his co-workers initially "scattered and ran" from the site. (Petition ¶¶ 1, 25; Doc. No. 7-1 at 2.) Petitioner alleges that the arresting agents did not know his identity, name, or anything about his

immigration status prior to his arrest. (Petition ¶ 27.)

After his arrest, Petitioner was transferred to and has since remained in custody at the Kandiyohi County Jail. (Petition ¶¶ 1, 8, 30.) He was served with a Notice to Appear on June 12, 2026, which commenced removal proceedings, charging him as being present without admission or parole and lacking a valid entry document. (Doc. No. 7-2.)

**DISCUSSION**

## I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner claims that Respondents exceeded or violated their arrest authority under 8 U.S.C. §§ 1226(a) and 1357(a)(2) which violated his Fourth Amendment rights, the Administrative Procedure Act, and the *Accardi* Doctrine. (Petition ¶¶ 69–85.) He also claims that his detention violates the Due Process Clause of the Fifth Amendment. (*Id.* ¶¶ 58–68.)[1]

---

[1] Respondents argue that the entire Petition should be denied because it was signed by Petitioner's counsel. (Doc. No. 6 at 2–4.) The argument is rejected because someone acting on the petitioner's behalf may sign and verify the petition. 28 U.S.C. § 2242. Doing so is particularly useful for managing the urgency and logistical difficulties of ICE detention. *See, e.g.*, *Franklin P.C.S. v. Blanche*, Civ. No. 26-3887 (JRT/EMB), 2026 WL 2687548, at *2 n.3 (D. Minn. Sept. 14, 2026); *Vu V.L. v. Mullin*, Civ. No. 26-2947 (LMP/JFD), 2026 WL 1893611, at *3–4 (D. Minn. July 1, 2026).

Petitioner challenges only the lawfulness of his present detention. He does not contest any removal order, the decision to initiate removal proceedings, or the execution of removal. Thus, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II. Analysis

### A. Statutory Arrest Authority

Petitioner claims that Respondents failed to effectuate a lawful arrest under applicable immigration law. Every federal administrative agency, including ICE, "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022). That means any failure to abide by the governing statutes and regulations represents taking action without lawful authority to do so. Accordingly, Petitioner's claim asks whether Respondents acted under the authority conferred to them by Congress.

Federal statutes dictate when it is proper to arrest a noncitizen during the removal process. *See Arizona v. United States*, 567 U.S. 387, 407 (2012). The Immigration and Nationality Act provides two mechanisms for arresting a noncitizen prior to a final removal order. One is to arrest with a warrant under the authority in 8 U.S.C. § 1226(a); the other is to arrest without a warrant under more limited authority in 8 U.S.C. § 1357. *See id.* at 408.

Respondents concede that because they did not file a Notice to Appear before an I-

200 was issued, "Petitioner's arrest must be judged by the [warrantless arrest] standards of 8 U.S.C. § 1357 and 8 C.F.R. 287.3." (Doc. No. 6 at 20–21.) A warrantless arrest may occur under § 1357 only when an officer has reason to believe that a noncitizen is present in violation of immigration law and likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2).

The phrase "reason to believe" has been interpreted to mean constitutionally required probable cause. *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). And "likely to escape" means likely to disappear before officers can obtain a warrant or likely to evade detention altogether, not just whether the noncitizen would remain at the scene of the encounter. *See Campos v. United States*, 888 F.3d 724, 734–35 (5th Cir. 2018) (stating the phrase means likely to "disappear before a warrant could be obtained"); *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–07 (N.D. Ill. 2016) (construing the phrase as meaning "likely to evade detention by immigration officers"); *see also A.P.P. v. Blanche*, Civ. No. 26-3125 (LMP/LIB), 2026 WL 2017765, at *3 (D. Minn. July 13, 2026) (collecting cases that construe the meaning of "likely to escape").

The question under "likely to escape" is whether immigration officers would have trouble finding the noncitizen again once they obtain a warrant. *See United States v. Bautisa-Ramos*, No. 18-cr-4066-LTS, 2018 WL 5726236, at *7 (N.D. Iowa Oct 15, 2018), *R&R adopted*, 2018 WL 5723948 (N.D. Iowa Nov. 1, 2018). The analysis therefore considers whether the noncitizen could be found later at another clearly identifiable location, like their home or place of employment. *See, e.g.*, *Escobar Molina v. U.S. Dep't of Homeland Sec.*, Civ. No. 25-3417 (BAH), 2026 WL 1256234, at *11

(D.D.C. May 7, 2026). ICE itself has given the "likely to escape" phrase this meaning. *See Hussen v. Noem*, No. 26-cv-324 (ECT/ECW), Doc. No. 85-1 (D. Minn. Filed Jan. 30, 2026) (attaching a January 2026 memorandum from former ICE Acting Director Todd Lyons stating that "likely to escape" means "unlikely to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained").

Removability alone does not make a noncitizen likely to escape. *See Moreno*, 213 F. Supp. 3d at 1007 (recognizing that equating potential removability with escape risk renders § 1357(a)(2) meaningless); *see also Orellana v. Nobles Cnty.*, 230 F. Supp. 3d 934, 945–46 (D. Minn. 2017) (concluding that the reason to believe a noncitizen was subject to removal did not show likelihood of escape). The inquiry implicates various considerations. Prior enforcement encounters, conflicting documents, and previous removals from the country weigh in favor, while lengthy residence in the country and strong community ties weigh against a person being likely to escape. *See Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 30–31 (D.D.C. 2025) (collecting cases to discuss factors that weigh for and against likelihood of escape).

Respondents argue Petitioner's warrantless arrest claim fails because ICE agents at the scene objectively had a reasonable, articulable suspicion that Petitioner was both present in violation of immigration law and likely to escape before a warrant could be obtained. They rely on the Form I-213, which states that officers had identified a work site in Bemidji, Minnesota "with multiple subjects believed to be residing and working in the United States illegally," and that "the subjects scattered and ran" while officers were

conducting surveillance in the area. (Doc. No. 7-1 at 2.)

With respect to an immigration violation, a generic statement that officers believed "multiple subjects" at the work site were in the United States illegally and that they ran does not equate to probable cause to believe that Petitioner was in the country unlawfully. No evidence shows that Petitioner was one of the subjects the officers had identified as someone unlawfully residing and working in the country. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (recognizing that probable cause must be particularized to the person searched or seized).

Respondents seem to argue that probable cause was developed based on information they learned from Petitioner—that he claimed to have entered the United States around December 15, 2022, at or near El Paso, Texas and was not "admitted or paroled by an Immigration Officer." (Doc. No. 6 at 22.) But nothing in the record suggests that the agents learned this information from Petitioner prior to his arrest. The I-213 is dated June 12, 2026, and mentions nothing about an interview. It only mentions that, once apprehended at the work site, Petitioner was served with an I-200 warrant and transported to Kandiyohi County Jail. (Doc. No. 7-1 at 2.) There is no information in the record that supports that officers had probable cause to believe that Petitioner was in the country illegally prior to his arrest.

With respect to escape risk, Respondents contend there was probable cause to believe Petitioner was likely to escape before a warrant could be obtained because he ran from the work site. However, the record indicates that Petitioner had prior encounters with law enforcement and immigration officials, none of which could be indicia that he

might flee. Also, the I-213 indicates that Petitioner ran while officers were conducting surveillance in the area, not that he ran from an officer while being approached. Other facts weighing against likelihood of escape are that Petitioner had community ties through his church and his gainful employment with a roofing company, through which officers could have learned where to find or how to contact Petitioner later.

Finally, Respondents point to their compliance with 8 C.F.R. § 287.3, which generally provides for a post-arrest examination, a determination about removal proceedings, notification of the reasons for detention, and a custody determination within 48 hours of a warrantless arrest. But that regulation does not provide that complying with any of its provisions cures an otherwise invalid warrantless arrest. Compliance with those post-arrest procedures does not supply the statutory authority that § 1357(a)(2) required at the time of the warrantless arrest.

On this record, Respondents lacked probable cause to conclude that Petitioner was unlawfully present when they arrested him without a warrant. Accordingly, Petitioner's warrantless arrest violated 8 U.S.C. § 1357.

**B. Remedy**

The remaining question is the consequence of the unlawful arrest. Respondents contend that, whatever defect attended the arrest, Petitioner is now properly subject to mandatory detention under § 1225(b)(2)(A). But as explained below, § 1225 supplies no arrest authority and cannot sustain the same uninterrupted custody that began through an arrest unauthorized by § 1357.

**1. Release preserves the statutory text and structure**

Under *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), a noncitizen in Petitioner's circumstances falls within § 1225(b)(2)(A) and, after the determination prescribed there, is subject to mandatory detention during removal proceedings. *Avila* did not decide the source or limits of the Government's authority to make a warrantless interior arrest. Thus, accepting that § 1225(b)(2)(A) applies to Petitioner does not answer whether Respondents may continue custody obtained through an arrest that violated § 1357(a)(2).

The Eighth Circuit has not squarely addressed this issue, and courts confronting related questions are divided. Some have denied release where another statutory basis for detention exists. *See, e.g.*, *Singh v. Sommer*, No. 7:26-cv-5013, 2026 WL 2042296, at *2–3 (D. Neb. July 15, 2026); *Cabrera v. Hidalgo*, No. 1:26-cv-1101 (LMB/LRV), 2026 WL 2002085, at *3 (E.D. Va. June 18, 2026); *A.P.A. v. Arteta*, No. 26-CV-3334 (AS), 2026 WL 1587452, at *3–4 (S.D.N.Y. June 3, 2026). Others have ordered release after finding that the Government lacked statutory authority for the arrest. *See, e.g.*, *Juan J.M.E. v. Easterwood*, Civ. No. 26-2270 (KMM/EMB), 2026 WL 1746672, at *2–3 (D. Minn. June 8, 2026), *R&R adopted*, 2026 WL 1747756 (D. Minn. June 17, 2026); *Alberto Perdomo Rivera v. Mullin*, No. 5:26-cv-04197-KES, 2026 WL 2276935, at *3 & n.1 (C.D. Cal. Aug. 6, 2026).

Rules of statutory construction apply. The statutory text itself marks the analytical starting point. Related statutory provisions should be read so each retains operative effect. *See Corley v. United States*, 556 U.S. 303, 314 (2009); *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Where a specific provision addresses the particular governmental authority at issue, it ordinarily governs over a more general provision that might otherwise be read to

cover the same subject. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (quoting *Morton*, 417 U.S. at 550–51).

Applying those principles to §§ 1357 and 1225 serves to harmonize their distinct but complementary purposes. Section 1357(a)(2) specifically governs the authority exercised here—the power to arrest a noncitizen without a warrant—and it conditions exercise of that authority on finding reason to believe both that the person is unlawfully present and that the person is likely to escape before a warrant can be obtained. Section 1225(b)(2)(A), by contrast, addresses what follows after inspection of an applicant for admission: if an examining immigration officer determines that an applicant is "not clearly and beyond a doubt entitled to be admitted," the applicant "shall be detained" for a removal proceeding under § 1229a. That provision says nothing about warrantless arrest authority.

Reading § 1225 to sustain Petitioner's current detention despite an unauthorized arrest under § 1357 would substantially diminish the limits Congress placed on warrantless arrests. Section 1357 permits such an arrest only when its specified conditions are met. Yet under Respondents' reading, ICE could arrest a noncitizen and even wholly ignore § 1357's conditions, conduct the § 1225 inspection made possible by that arrest, and then continue the same custody because § 1225 requires detention. But ICE identifies no statutory authority permitting it to bypass § 1357's conditions when making a warrantless arrest.

The two provisions can instead be given full effect according to the different subjects they address. Section 1357 governs whether ICE may take a noncitizen into

custody in the interior without a warrant. Section 1225(b)(2)(A) addresses what follows after examination: if an examining immigration officer determines that an applicant for admission is "not clearly and beyond a doubt entitled to be admitted," the applicant "shall be detained" for removal proceedings. *Avila* requires enforcement of that detention command, but it does not hold that § 1225 supplies authority for the warrantless arrest that precedes it. Giving effect to § 1357's specific limits on that arrest therefore does not diminish § 1225 or conflict with *Avila*; it gives effect to both statutes as written.

That reading also fits the statutory sequence. Section 1357(a)(2) directs that a person arrested without a warrant be taken without unnecessary delay before an officer authorized to examine the person's right to enter or remain in the United States. *See* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(a). An examination following arrest may supply the determination relevant to § 1225(b)(2)(A), but the later examination does not supply the distinct authority needed for the earlier warrantless seizure.

The question, then, is not whether § 1225 "cures" the defective arrest. It does not make the arrest lawful. The question is whether § 1225 independently authorizes continuation of the same custody even though the Government lacked statutory authority to initiate that custody through the warrantless arrest it chose to make. The statutory text provides no basis for treating the post-arrest detention directive as an independent authorization for custody obtained through an arrest Congress expressly limited in § 1357.

This conclusion does not treat Petitioner's current confinement as "poisonous fruit" or hold that every earlier statutory violation necessarily invalidates later custody. It

rests on the narrower relationship between these provisions. Respondents used the warrantless-arrest authority supplied by § 1357 to take Petitioner into custody, and § 1225 contains no independent grant of arrest authority. The later § 1225 determination may remain valid for the purposes that provision serves, but it does not retrospectively supply the authority that was absent when this custody began.

Accordingly, § 1225(b)(2)(A) does not independently sustain Petitioner's present custody that began with an arrest that violated § 1357(a)(2).

### 2. *Bilokumsky* and later proceedings

*United States ex rel. Bilokumsky v. Tod* states that if "sufficient ground" for a prisoner's detention is shown, the prisoner "is not to be discharged for defects in the original arrest or commitment." 263 U.S. 149, 158 (1923) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

That principle cannot be given short shrift because of the case's age. The Supreme Court later cited the same page of *Bilokumsky* in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984), when explaining that an unlawful arrest does not itself invalidate a subsequent deportation proceeding.[2]

The *Bilokumsky* principle, however, does not resolve this case. *Bilokumsky* establishes that an unlawful original arrest does not invariably require habeas release

---

[2] Respondents also point out that the Supreme Court has "never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." *Gerstein v. Pugh*, 420 U.S. 103, 113 (1975). *Gerstein* does not resolve the issue here. As explained above, the record does not show that Respondents had reason to believe Petitioner was unlawfully present or that he was likely to escape before a warrant could be obtained, therefore both prongs of § 1357(a)(2) lacked probable cause.

when sufficient lawful grounds for detention subsequently exist. The unresolved question here is whether § 1225(b)(2)(A) supplies that "sufficient ground" where Petitioner remains in the same custody acquired through an interior warrantless arrest for which § 1357 specifically supplied—and limited—the Government's authority.

The statutory scheme here answers that narrower question. As explained above, the examination contemplated by § 1225 may determine whether detention is required, but it does not provide a separate basis for maintaining the same uninterrupted custody when the statutory authority required to initiate that custody was absent. Giving § 1225 that effect reads § 1357's arrest requirements out of the statutory scheme. That is why § 1225 is not the "sufficient ground" contemplated by *Bilokumsky* for Petitioner's custody.

Nor does release invalidate or alter Petitioner's removal proceeding. *Lopez-Mendoza* teaches that the legality of an arrest does not itself determine removability and that an unlawful arrest does not necessarily invalidate the ensuing immigration proceeding. 468 U.S. at 1039–40. Petitioner does not ask to terminate the removal case, suppress evidence in it, or otherwise alter the merits of the removability inquiry. That proceeding may continue notwithstanding the relief ordered here.

The distinction is therefore between the Government's authority to pursue removal and its authority to maintain Petitioner's present physical custody. The former is unaffected. The latter depends on the statutes governing arrest and detention, read together according to their distinct functions. Because § 1357 did not authorize the warrantless arrest through which Respondents acquired custody, and § 1225 does not

independently authorize continuation of that custody, Petitioner is entitled to release.

### 3. Conclusion

The appropriate habeas remedy is release from the present custody. *See* 28 U.S.C. §§ 2241(c)(3), 2243; *Munaf v. Geren*, 553 U.S. 674, 693 (2008). That relief is narrow. It terminates the detention initiated through an unauthorized arrest under the provision Congress specifically enacted to govern the seizure at issue. It does not invalidate § 1225, terminate the removal proceedings, or preclude Respondents from later arresting or detaining Petitioner pursuant to lawful authority and in compliance with applicable statutory and regulatory requirements.

Accordingly, the Petition for Writ of Habeas Corpus is granted in part, and Respondents are ordered to immediately release Petitioner. Petitioner's other habeas claims are not reached, and this Order expresses no position on their merits.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Jonathan L.S.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Respondents must immediately release Petitioner from custody.

3. When Petitioner is released:

    a. **Release and Return of Property.** In the event that Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications,

and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

4. **Notice.** Within **48 hours** of entry of this Order, Respondents shall file a status update confirming the time, date, and location of Petitioner's release.

5. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: October 26, 2026
Time: 8:59 a.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge